UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN R. STINSON,<br>a/k/a Steven R. Stinson,<br><br>Defendant. | 4:15-CR-40100-01-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Stephen R. Stinson, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[1] Docket 174. Plaintiff, the United States of America, opposes the motion. Docket 179. For the following reasons, the defendant's motion for compassionate release is denied.

## BACKGROUND

On March 22, 2017, Stinson pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 115 ¶ C; Docket 127. On June 12, 2017, the court sentenced Stinson to 262 months in custody, followed by eight years of supervised release. Docket 154; Docket 157 at 2-3. His projected date of release is August 25, 2037. *See Find an Inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 8, 2022).

Stinson is currently incarcerated at FCI Oakdale II, which is

---

[1] The document filed by Stinson was captioned a "Motion for the Appointment of Counsel Pursuant to 18 U.S.C. § 3006A." Docket 174. Subsequently, the document was categorized as a "Motion for Relief under FIRST STEP ACT (Compassionate Release)." The court will construe the motion as a Motion for Compassionate Release. *See* Docket 175.

encompassed by FCC Oakdale, a low security federal correctional complex. *Id.*; *FCI Oakdale II*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/oad/ (last visited June 8, 2022). The total population at FCI Oakdale II is 1,150 persons. *FCI Oakdale II*.

Stinson is 52 years old. *See Find an Inmate.* In support of his motion for relief, Stinson cites the COVID-19 pandemic and his diagnosed hypothyroidism, which he claims places him in a high-risk category. Docket 174 at 1. He also points to his sentence enhancement under 21 U.S.C. § 851, his participation in programs while incarcerated, and his healthy relationship with his family as circumstances warranting release under the First Step Act. *Id.* Stinson submitted an Inmate Request to the warden of FCC Oakdale requesting compassionate release, which was received on December 13, 2021. Docket 178 at 1. On December 30, 2021, the warden denied Stinson's request because Stinson had not served 50% of his sentence to qualify for home confinement. *Id.* The United States filed a response opposing his motion on February 1, 2022, claiming Stinson's circumstances do not meet the high standard under the statute and his motion should be denied. *See* Docket 179 at 8-11. Under Standing Order 20-06, the Federal Public Defender was appointed as counsel, but the federal public defender's office notified the court that it did not intend to file a supplement in support of Stinson's motion. *See Notice of Intent NOT to Supplement.*

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.

§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was enacted, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (Nov. 2021). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Stinson claims that his hypothyroidism and the COVID-19 pandemic has provided an increased and "unnecessary" risk to his health and life and has met the standard of "extraordinary and compelling reasons" required under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 174 at 1-2. Stinson also cites his career offender sentence enhancement under 21 U.S.C. § 851(a), his course work while in custody, and his familial relationships as additional reasons to grant his motion for compassionate release. *Id.*

I.     **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

As noted above, Stinson filed an Inmate Request to Staff form for consideration of compassionate release, which was denied by the FCC Oakdale warden on December 30, 2021. Docket 178 at 1. Having presented his request to the warden and being denied, and hearing no objection from the United States, the court will presume Stinson has satisfied the administrative exhaustion requirement and will review the matter on the merits.[2]

II.    **Extraordinary and Compelling Reasons**

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to three categories. USSG

---

[2] The warden's response states that if Stinson is not satisfied with the decision, he may commence an appeal through the administrative remedy process within 20 days of receipt of the response. Docket 178 at 1. There is no indication that Stinson appealed the decision administratively.

§ 1B1.13, cmt. n.1(A)-(C). The three categories apply to a defendant's (1) serious physical medical condition or cognitive impairment, terminal illness, or deterioration of physical or mental health because of the aging process, (2) advanced age and deteriorating health in combination with the amount of time served, and (3) compelling family circumstances. *Id.* A fourth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g.*, *United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Stinson primarily contends that his hypothyroidism amidst the global COVID-19 pandemic, the current conditions of FCI Oakland II, his participation in coursework while incarcerated, and his positive relationship with his family satisfy the standard of "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). *See generally* Docket 174. He also contends

5

that his sentence enhancement under 18 U.S.C. § 851 is no longer relevant because the crime it was applied to occurred when he was involved in a gang that he has since departed. *Id.* As a result, the court will analyze his circumstances under the medical conditions category, USSG § 1B1.13 Note 1(A), the age category, USSG § 1B1.13 Note 1(B), and the catch-all provision, USSG § 1B1.13 Note 1(D).

### A.     Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n.1(A)(i)-(ii).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC states individuals with the following conditions are more likely to become very sick with COVID-19: cancer or having a history of cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, interstitial lung disease,

6

idiopathy pulmonary fibrosis, pulmonary embolism, and pulmonary hypertension), cystic fibrosis, dementia or other neurological conditions, diabetes (type 1 or type 2), having certain disabilities (such as ADHD, cerebral palsy, birth defects, intellectual and developmental disabilities, learning disabilities, spinal cord injuries, or Down syndrome), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state (having chemotherapy or a solid organ transplant), mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight or obese, partaking in little or no physical activity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, stroke or cerebrovascular disease, substance use disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

In his motion, Stinson did not cite additional health conditions other than hypothyroidism, which he claims places him at a high risk of a severe COVID-19 infection. Docket 174. As of May 2, 2022, the CDC has not listed hypothyroidism as an underlying medical condition that exposes an individual to a greater risk of COVID-19. *See People with Certain Medical Conditions.*

The court has reviewed the medical records in this case. Stinson's records list current ailments as hypothyroidism, an unspecified basal cell carcinoma, a family history of melanoma, and a form of secondary syphilis. Docket 176 at 47-48, 118-119. As of December 31, 2021, Stinson was taking Levothyroxine for his hypothyroidism, doxycycline hyclate to treat skin lesions,

7

and Ibuprofen as needed for pain following the removal of a basal cell carcinoma on December 13, 2021. *Id.* at 4, 18-19, 53. He is currently not prescribed medication for the secondary form of syphilis. *See id.*

Stinson was diagnosed with hypothyroidism at an unknown time, and his condition has remained stable throughout his stay with the BOP. Docket 176 at 100. During a clinic visit on February 24, 2020, his Thyroid-Stimulating Hormone (TSH) levels were consistently low, so his physician considered stopping his use of levothyroxine. *Id.* at 96-99. Throughout his time in the BOP, Stinson's dosage of levothyroxine has been managed and adjusted as needed in conjunction with his TSH levels. *Id.* at 7, 9, 22-24, 31, 36, 93-97, 99-101, 107-109, 111, 140, 145-146, 150, 153, 178, 193, 195, 197. This court has previously held that hypothyroidism does not constitute an extraordinary and compelling reason to justify an early release. *See United States v. Kenefick*, No. 5:19-CR-50058-01-KES, 2022 WL 1295898, at *4 (D.S.D. Apr. 13, 2022). Additionally, there is no indication from Stinson's medical records that his hypothyroidism is not sufficiently managed by his medication and the medical staff at FCI Oakdale II.

The medical records also show Stinson had complained of a "spot" on his left shoulder during a few clinic visits. Docket 176 at 11, 15, 18, 22. After a skin biopsy was obtained, medical staff diagnosed it as a superficial basal cell carcinoma on August 4, 2021. *Id.* at 11-15. The carcinoma was removed without issue on December 13, 2021. *See id.* at 3. The status of the carcinoma following its removal is unknown except that Stinson was scheduled to have his sutures removed on January 3, 2022. *Id.* at 1.

8

Even though basal cell carcinoma is a type of skin cancer, very rarely does it spread to nearby lymph nodes and other areas of the body. *See generally Basal Cell Carcinoma*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/basal-cell-carcinoma/symptoms-causes/syc-20354187 (last visited June 8, 2022). Additionally, Stinson's provider noted that basal cell carcinomas are "very common, least likely to spread, easier to treat, [and] slow-growing." Docket 176 at 11. Lastly, although Stinson has a history of "flares" from a secondary form of syphilis, he has not had a reactive test since 2018 and is in remission. Docket 176 at 26, 148.

The court has required a more particularized showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. After reviewing Stinson's medical records, the court is not convinced that his health conditions prevent him from obtaining sufficient medical care in a correctional facility setting. In sum, the court does not believe his medical conditions amount to extraordinary and compelling circumstances.

Additionally, the COVID-19 pandemic alone is insufficient to warrant an early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 8, 2022). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See id.* From March 26, 2020, to the present, 43,072 inmates have been placed in home confinement.

9

*Id.* These measures have led to a dramatic decrease in the total BOP population, which has increased opportunities for social distancing while reducing the strain on BOP resources.

The court believes Stinson's medical conditions are well-managed at FCI Oakdale II. The facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility acts to treat any inmate who does contract COVID-19. To date, the facility has had 2 deaths resulting from a COVID-19 infection, and 714 inmates have recovered. *See COVID-19 Coronavirus.* According to Stinson's medical records, he has been tested at least twice, with both tests being negative. Docket 176 at 47. This persuades the court that FCI Oakdale II has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who may become infected.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See COVID-19 Coronavirus.* As of June 8, 2022, 320,077 doses have been administered systemwide. *Id.* At FCC Oakdale, 258 staff and 1971 inmates were fully inoculated as of June 8, 2022.[3] *Id.* Stinson has received the two primary doses of the Pfizer COVID-19 vaccine, but it appears he is not up to

---

[3] Additional booster shots are not reflected in the data. *See COVID-19 Coronavirus.*

10

date with his COVID-19 vaccines.[4] *See* Docket 176 at 52. The medical records do not allude to whether Stinson has received or been offered a booster vaccine. *See id.* The BOP affirms that "inmates have also been offered booster shots in accordance with CDC guidance."[5] *See COVID-19 Coronavirus.* The court encourages Stinson to obtain his booster shots for him to be up to date with his COVID-19 vaccines and achieve additional protection against the virus.

Moreover, the BOP's efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of June 8, 2022, the BOP reported that 157 federal inmates had confirmed positive test results for COVID-19 nationwide. *See COVID-19 Coronavirus.* There are currently over 139,500 federal inmates in BOP-managed facilities. *Id.*

Considering the above, the court finds that Stinson's circumstances do not clear the high bar necessary to warrant compassionate release for

---

[4] The CDC states that a person is up to date with their COVID-19 vaccines when they "have received all doses in the primary series and all boosters recommended for you, when eligible." *See Stay Up to Date with Your COVID-19 Vaccines*, Ctrs. for Disease Control & Prevention (May 24, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html. An individual is eligible for their first Pfizer-BioNTech booster vaccine "at least 5 months after the final dose in the primary series[.]" *See COVID-19 Vaccine Boosters*, Ctrs. For Disease Control & Prevention (May 24, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html. Adults over 50 years old are eligible for their second booster "at least 4 months after the 1st booster[.]" *Id.*

[5] The BOP released guidance on the rollout of COVID-19 vaccines. *See COVID-19 Vaccine Guidance Federal Bureau of Prisons Clinical Guidance*, Fed. Bureau of Prisons (Feb. 25, 2022), https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v17.pdf. Inmates who received the Pfizer-BioNTech COVID-19 vaccine as their primary vaccination series may receive a booster dose at least "five months after the second primary series dose." *Id.* at 21.

"extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.   Age Category, Note 1(B)

Under the First Step Act, the defendant must be (i) at least 65 years old; (ii) experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. *See* USSG § 1B1.13, cmt. n.1(B). Stinson is 52 years old and has only served approximately 31.5% of his sentence. *See Find an Inmate*. Thus, this category does not apply to him. *See id.*; Docket 176 at 361.

### C.   Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. This category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Stinson claims that the § 851 enhancement due to his criminal history and involvement in a gang is no longer applicable to his sentence as he has since disassociated himself from the gang. Docket 174 at 1.

The court concludes that the enhancement was applied appropriately. On March 7, 2017, the government filed an information pursuant to 21 U.S.C. § 851(b) notifying Stinson of its intention to seek an increased punishment due to Stinson's prior conviction of a felony drug offense in 2011. Docket 114. The statute requires the defendant to affirm or deny whether he was previously convicted of the alleged felony drug offense before a sentence is imposed. *See*

12

21 U.S.C. § 851. Also, in the plea agreement signed by Stinson, there is a provision stating that Stinson agreed not to challenge the enhanced penalty based on his prior conviction. Docket 115 ¶ J. Subsequently, Stinson had a change of plea hearing on June 12, 2017, and he presented no concerns regarding the sentence enhancement. *See* Docket 127 at 2. Further, the Presentence Investigation Report (PSR) also listed the prior conviction when calculating his criminal history score. Docket 137 ¶ 84. No objections to the PSR were filed, and both parties affirmed the conviction at sentencing. Dockets 138, 154. As a result of the enhancement, his guideline range was 262-327 months' custody. Docket 137 ¶¶ 80, 81. Stinson was sentenced at the bottom end of the range to 262 months' custody on June 12, 2017. Docket 157 at 2. Although Stinson notes that he has disaffiliated with the gang, the enhancement was correctly applied. Docket 174 at 1. Stinson's time for appeal of his judgment of conviction has expired. A judgment was filed on June 12, 2017, and more than 14 days have passed since the filing. *See* Fed. R. App. P. Rule 4(b)(1)(A)(i).

     Stinson also reports that he received his GED and has been an avid participant in BOP education and vocational courses. Docket 174 at 1; Docket 176 at 355-361. Although the court applauds Stinson's determination to live a productive and crime-free life upon release, this is not a sufficient factor to favor an early release.

     Finally, Stinson indicates that he has maintained a relationship with his family while in prison and currently has plans to stay with his nephew upon release. Docket 174 at 1. While the court acknowledges that he has a stable

13

plan upon release, it is still not enough to support compassionate release.

The court finds that the circumstances cited by Stinson regarding his § 851 enhancement, his participation in educational programming, and his positive relationship with his family do not warrant a reduction in sentence under the catch-all category, Note 1(D).

### III. Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Stinson pleaded guilty to conspiracy to distribute a controlled substance. Docket 127. Various individuals told law enforcement that Stinson would sell methamphetamine to them and other individuals after he had arrived in Mitchell, South Dakota in 2014. Docket 137 ¶ 18. His girlfriend at the time and co-defendant in this case told law enforcement that Stinson would receive packages at the residence containing methamphetamine and occasionally marijuana. *Id.* Others involved in the conspiracy stated that Stinson had developed a plan to have people in Fresno, California, send packages of methamphetamine, marijuana, and hydrocodone pills to various addresses in Mitchell. *Id.* ¶ 19. While the PSR states that the exact amount is unknown, under USSG § 2D1.1(a)(5), when a defendant is accountable for at least 150 grams but less than 500 grams of methamphetamine, the Base Offense Level is 32. *Id.* ¶ 27.

The total offense level calculated was 34, and Stinson was in criminal history category VI. *Id.* ¶¶ 36, 53. Stinson is categorized as a career offender due to his prior felony drug offense conviction under USSG § 4B1.1(b). *Id.* § 53.

As a result, the United States pursued an increased punishment under 21 U.S.C. § 851(a). *Id.* ¶ 84; Docket 114; Docket 115 § J. Stinson's guideline range was 262 to 327 months in custody, and he faced a mandatory minimum sentence of 10 years. Docket 137 at ¶¶ 80-82. The court sentenced Stinson at the bottom end of the guideline range to 262 months in custody. Docket 154 at 2; Docket 157 at 2. After careful consideration, the court concludes Stinson's sentence of 262 months continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Stinson has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 174) is denied.

Dated June 16, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
